256 So.2d 744 (1971)
HEP DEVELOPMENT CORPORATION
v.
Ashton J. MOUTON, Collector of Revenue, State of Louisiana.
No. 8615.
Court of Appeal of Louisiana, First Circuit.
December 20, 1971.
Rehearing Denied January 31, 1972.
Writ Refused March 3, 1972.
Donald C. Theriot, James W. Murray, Robert L. Royer, James A. Norris and Ben F. Day, Revenue Dept., Legal Div., Baton Rouge, for appellant.
James A. Hayes, Edward B. Benjamin, Jr., Prieur J. Leary, Jr., and Donald T. Theriot of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
TUCKER, Judge.
The defendant-appellant, the State of Louisiana, through the Department of Revenue, brings this appeal from a judgment of the lower court, which ordered the State to refund franchise taxes to HEP Development *745 Corporation, the plaintiff-appellee, for the years 1968, 1969 and 1970, in the total sum of $30,899.19 with interest at the rate of two (2%) per cent as provided by LSA-R.S. 47:1576. The plaintiff paid these taxes under protest, and the defendant exacted such taxes on the basis of its contention that certain "subject to" mortgages, which stood against property purchased by plaintiff from Sotan, Inc., possessed the characteristics of "borrowed capital" under LSA-R.S. 47:603, and, in the alternative, would fill the definition of surplus under the said statute. In either alternative, the defendant claims that the sum of $8,130,000.00, the original amount due on the mortgages was assessable for the franchise taxes levied.
LSA-R.S. 47:601 provides that every domestic corporation shall pay a corporate franchise tax on the amount of its capital stock, surplus, undivided profits, and borrowed capital. LSA-R.S. 47:603 defines borrowed capital as "all indebtednesses of a corporation, subject to the provisions of this Chapter, maturing more than one year from the date incurred". It appears that "borrowed capital" under the pertinent statute is more or less synonymous with "long term indebtedness". A tax is imposed on the long term indebtedness of a corporation to prevent its issuance of an insignificant amount of stock and operating on borrowed money which borrowed funds, absent a specific statutory provision, would be exempt from corporation franchise taxes.
In essence, the trial court held that the amount of the mortgages in question do not constitute borrowed capital because plaintiff corporation did not become personally bound for the mortgage amounts when it purchased the property subject to the outstanding mortgages. On authority of Balfour v. Chew, 4 Mart.(N.S.) 154, and Gauche v. Gerdes, 10 Orl.App. 56, the lower court held that the mortgages remained the personal obligation of Sotan, Inc., and that plaintiff herein became obligated only to the extent of the value of the property. On this basis, the trial court concluded that the mortgages were not an indebtedness of plaintiff and therefore did not fall within the definition of borrowed capital as contained in Section 603, above.
We agree that our jurisprudence is to the effect that one who assumes a mortgage becomes personally bound thereon, but that one who purchases subject to a mortgage incurs no personal liability. Balfour and Gauche, above.
In reaching the conclusion on the issue of whether the nature of the acquisition constituted the mortgages as borrowed capital, the trial court relied upon Lenox Realty Company v. Hackett, 122 Conn. 143, 187 A. 895, 107 A.L.R. 1306. In Lenox Realty, the court held it error to include an indebtedness represented by a mortgage, subject to which a corporation acquired title to the mortgaged property, but which the corporation did not assume or undertake to pay, in computing the tax due under a statute similar to our own. We note also that the annotation appearing in 107 A.L.R. 1310 cites other authorities to that same effect.
In reaching its conclusion, the trial court relied upon certain Federal cases dealing with the term "indebtedness". In Commissioner of Internal Revenue v. Park, 3 Cir., 113 F.2d 352, the court held that, as used in revenue statutes, the term indebtedness means something owed in money which one is unconditionally obligated or bound to pay, and the payment of which is enforceable. In United States v. Virgin, 5 Cir., 230 F.2d 880, it was held that "personal liability", as used in defining a debt, means a sum of money due by contract, express or implied.
While these authorities would be persuasive, though not controlling in the absence of expression in our own jurisprudence on the subject, we find precedent in our own law supportive of a contrary result. In State v. Union Building Corporation, 185 La. 598, 170 So. 7, it was contended that a $1,500,000 mortgage assumed by a *746 corporation should not be deemed borrowed capital for purposes of determining the amount of corporate franchise tax due. In Union Building, above the court rejected the argument, stating:
"This argument, we think, is without merit. The only asset the defendant corporation has is the office building which it operates. Presumably, the building is worth what the defendant agreed to pay for it, which was $1,500,000. It was purchased by defendant without the immediate expenditure of any sum whatever. The purchase price was paid by the assumption of the indebtedness, which in principle is the same as if the corporation had borrowed the amount, paid the price with the proceeds of the loan, and then secured the loan by mortgage on the property. The capital invested by the defendant in its business is the price of the building, and it matters not whether that capital was obtained by assuming the indebtedness or whether it was literally borrowed and put into the business. The result is the same. To hold otherwise would thwart the purpose of the act. It would permit a ten thousand dollar corporation to do a million dollar business by paying a license tax based on the capital stock alone, a subterfuge pure and simple."
In so concluding, the court makes it clear that the statute must be interpreted to accord it full legislative intent, and that indulgence in technicalities will not be permitted to defeat the purpose of the law. The court in Union Building, above, then made the following significant finding:
"* * * Manifestly the Legislature intended that the total amount of all capital made use of by a domestic corporation in the conduct of its business should be used as a basis for computing the franchise or license tax. In arriving at the total amount of capital used the following items are considered: First, the capital stock; second, the surplus, if any; third, undivided profits, if any; and, fourth, borrowed capital, if any.
"What the act means by saying that `if the capital used or invested in the business or enterprise of such corporations includes borrowed capital, in excess of the capital stock, surplus and undivided profits, such excess or' (of) `borrowed capital shall be added,' etc., is that, if the corporation uses in the conduct of its business any borrowed or additional capital, that is, capital beside that which was contributed by the stockholders in the purchase of the stock, and the earnings of the corporation, this borrowed or additional capital must be added to the other capital in order to form a basis for computing the tax. The amount of the tax is computed upon the amount of capital used, and, if the corporation uses more capital than it owns, it must pay the tax not only on that which it owns but also on that which it does not own, that which it borrows and puts into the business. The sum total is the amount of `capital used or invested in the business or enterprise of such corporation,' and forms the basis for `computing the franchise tax.'"
We understand the foregoing language in Union Building, above, to mean that for purposes of the tax in question that if a corporation makes use in its business of any borrowed or additional capital, aside from that which was contributed by its stockholders in the purchase of stock, and corporate earnings, such borrowed or additional capital must be considered in computing the tax in question.
It is conceded that Union Building, above, involved an assumed mortgage which rendered the corporation personally liable thereon, and, in that respect, it is distinguishable from the case at bar. Nevertheless, we believe the principle enunciated therein to be applicable herein in that it extends the term borrowed capital to include all additional capital made use of by a corporation in the conduct of its affairs. We also note that the rule announced in Union Building, above, was expressly approved and reiterated in State v. Mayer *747 Sugar & Molasses Co., 204 La. 742, 16 So. 2d 251.
In this instance, plaintiff is clearly making use of the aggregate of $8,130,000.00 loaned to Sotan, Inc. by the mortgage holders. Because of these advances by the mortgagor to a third party to whom plaintiff is not personally bound, plaintiff has acquired an asset presumably worth its recited sale value. Concededly, plaintiff is not personally bound on the mortgages. Nevertheless, if the mortgagor, Sotan Inc., does not discharge the indebtedness, plaintiff must either pay the obligation or suffer the loss of its ownership and attendant right to its use and enjoyment. To this extent, at least, the obligation to pay the mortgages represents a potential obligation on plaintiff's part. Since plaintiff has not advanced the funds expended in acquiring the property, it is clear that plaintiff is using the funds of someone else to accomplish this highly beneficial result. Because of plaintiff's potential obligation to pay, we believe that the method of financing employed is in legal effect an indirect form of borrowing. It matters not that plaintiff had no intention of circumventing the applicable tax. Since plaintiff is actually using the amount of mortgage money invested in subject properties, said funds are deemed borrowed or additional capital which must be taken into consideration in computing the tax in question. Union Building, above; Mayer, above.
The conclusions reached obviate the necessity of our considering whether the sum of the mortgages constitutes "surplus" as alternatively contended by appellant.
It is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff, HEP Development Corporation, be reversed and set aside, and judgment rendered herein in favor of defendant, Ashton J. Mouton, Collector of Revenue, State of Louisiana, dismissing plaintiff's action with prejudice; all costs of these proceedings to be paid by plaintiff, HEP Development Corporation.
Reversed and rendered.